Eastern District of Kentucky
FILED
SEP 2 7 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-472-GWU

THOMAS HEARLD,                                                                               PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Hearld

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hearld

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Thomas Hearld, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of a laceration to the left hand, a history of gastroesophageal reflux disease (GERD), a mild major depressive episode, a history of alcohol abuse in full remission, nicotine dependence, and estimated borderline intellectual functioning. (Tr. 23). Nevertheless, the ALJ determined that the plaintiff retained the residual functional capacity to perform "medium" level exertion jobs requiring "no greater ability than to understand and remember simple instructions, sustain attention to routine, simple tasks, interact with supervisors, and to adapt to changes and pressures in a routine work setting," and that the plaintiff was capable of performing his past relevant work as a hospital cleaner/janitor (Tr. 24-5). Therefore, the ALJ concluded his analysis at Step Six of the Garner analysis, and found the plaintiff not to be under a disability. The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Hearld

Mr. Hearld alleged disability due to problems using his left hand, back and neck trouble, and chest pains. (Tr. 64). At the administrative hearing, he also described depression. (Tr. 247).

The plaintiff's arguments on appeal concern (1) the ALJ's alleged failure to accept any limitations in the plaintiff's use of his left hand following the laceration; (2) the failure of the ALJ to find the plaintiff's back pain to represent a "severe" impairment; (3) the failure to utilize a vocational expert (VE) in the presence of non-exertional limitations; and (4) an inadequate assessment of the plaintiff's mental functioning.

Medical records in the transcript show that Mr. Hearld was treated as an outpatient at Lake Cumberland Hospital on August 7, 2002 for an uncomplicated laceration of his left hand, which included a repair of a laceration of a tendon. (Tr. 126,128-30). It was noted that "neurovascular and sensory [examinations were] intact," and he was able to move his fingers. (Tr. 128). No restrictions were given. Although the plaintiff was seen on September 23rd by his family physician, with complaints of chest pain, apparently no complaints were made of left hand problems. (Tr. 140). The family physician, Dr. John Patton, subsequently spoke to a state agency physician, Dr. R. K. Brown, and apparently did not mention left hand problems at that time, stating that the plaintiff had been seen "infrequently" for GERD, prostatitis, and reflux esophagitis. (Tr. 157-8). His chest pain did not appear

to be cardiac, and Dr. Patton did not believe that back pain was a significant complaint. (Tr. 158).

Dr. Bobby J. Kidd conducted a consultative examination of the plaintiff on April 6, 2004 and did find a reduced grip in the left hand compared to the right, although as a whole indicated that the plaintiff had a "normal physical examination." (Tr. 152-5). No functional restrictions were given. A reviewing state agency physician subsequently indicated that the plaintiff did not have a "severe" physical impairment. (Tr. 176). Another consultative examination had been conducted for Worker's Compensation purposes by Dr. David Muffly on May 20, 2004. (Tr. 187). Apparently, his records were not submitted until after the administrative hearing; thus, the state agency physician did not have an opportunity to review them. Dr. Muffly indicated that the plaintiff had normal strength and sensation in his arms, except for the dorsal aspect of the left small and ring finger, and also had a tender scar on the left hand and, consistent with the findings of Dr. Kidd, also found reduced grip strength in the left hand. (Tr. 188). However, he also noted that the plaintiff had normal range of motion of the fingers, and an x-ray of the left hand was negative for fractures. (Id.). Extension of the cervical spine and all ranges of motion of the lumbosacral spine were reduced to a certain extent. (Id.). There were also spasms and tenderness in the low back. Lumbar x-rays showed facet arthritis of the lower to lumbar levels. (Id.). Dr. Muffly concluded that the plaintiff would have restrictions of lifting no more than 20 pounds, that he needed to avoid gripping and

"repeated use" of the left hand, and should do only a moderate amount of bending and stooping. (Id.).

The plaintiff argues on appeal that Dr. Kidd's examination did not necessarily preclude the limitations described by Dr. Muffly. The ALJ noted that Dr. Kidd had found that Mr. Hearld "could make a fist, oppose his thumb tip to the fingertips without difficulty, and was able to pick up a coin with either hand." (Tr. 20, 154). Both physicians, however, found a reduction of grip strength, and the plaintiff maintains that the actions described by Dr. Kidd require little or no strength or agility. Therefore, in the absence of any specific restrictions by Dr. Kidd, the plaintiff argues that Dr. Muffly's limitations should be controlling. However, the plaintiff has the burden of showing that he cannot return to his past relevant work, either as he performed it or as it is performed in the national economy. The <u>Dictionary of Occupational Titles</u> (DOT) description of the job of medium level janitor, Section 382.664-010, does not indicate that "gripping" is an action specifically required. While "handling" and "fingering" are required "from 1/3 to 2/3 of the time," it is not clear that this would be the equivalent of "repeated use" of the left hand, even assuming that the objective findings supported this portion of Dr. Muffly's restrictions.[1] Moreover, the plaintiff indicated in his Disability Report that he did no handling, grabbing, or grasping of big objects, no reaching, and no lifting. (Tr. 66).

---

[1] "Feeling" is not required in the job of janitor, according to DOT Section 382.644-010.

Another difference between Dr. Kidd and Dr. Muffly was that the latter found some spasms and restrictions on range of motion in the back, and had access to X-rays showing some facet arthritis. The plaintiff contends that Dr. Muffly's restriction to a moderate amount of bending and stooping should be controlling. Once again, however, DOT 382.664-010 indicates that the job of janitor can be performed with "occasional" stooping, and Mr. Hearld indicated that he had to stoop only 2 hours a day. (Tr. 66).

Therefore, the plaintiff's job as he performed it appears to have been consistent with Dr. Muffly's restrictions, and the Court concludes that it was not error for the ALJ to stop the sequential evaluation process at Step Six.

Regarding the plaintiff's final argument concerning mental functioning, the plaintiff briefly sought treatment at the local Comprehensive Care Center (CCC), where he was given a diagnosis by Dr. S. Raza of post traumatic stress disorder and "mood disorder due to back pain," but, as of his last visit on April 8, 2004, was assigned a Global Assessment of Functioning (GAF) score of 65. (Tr. 203, 209). A GAF score in this range reflects only mild symptoms. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. Mr. Hearld testified at the administrative hearing in December, 2004 that he was not taking the medication that had been prescribed for him, and he had stopped going to CCC. (Tr. 244-5). A psychological examination by Dr. Kenneth Starkey in March, 2004, produced a primary diagnosis of a pain disorder with both general medical and

psychological conditions, along with alcohol abuse (in full sustained remission), nicotine dependence, and borderline intellectual functioning. (Tr. 149-50). Dr. Starkey also assigned a GAF score of 64, consistent with the CCC psychiatrist. (Id.). Even combining his mental and physical symptoms, Dr. Starkey felt that the plaintiff would have only mild impairment in his social or occupational functioning. (Id.). The plaintiff's main argument concerns Dr. Jeffrey S. Grand, a licensed psychologist, who examined the plaintiff on one occasion, and diagnosed a mild major depressive disorder. (Tr. 182). He opined that Mr. Hearld would have limitations in his ability to interact with others in a reliable or predictable manner, and his preoccupation with physical health would likely impair his success in learning new tasks or responsibilities. (Tr. 181). Once again, even generously assuming that these restrictions would preclude the plaintiff's past relevant work, the ALJ was not required to give the opinion of a one-time examiner such as Dr. Grand greater weight than the opinion of Dr. Starkey, another one-time examiner, or Dr. Raza, who briefly treated the plaintiff.

The decision will be affirmed.

This the __27__ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE